# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

Civil Action No. 18-10766 (GAO)

# COMMONWEALTH OF MASSACHUSETTS
## Superior Court Department of the Trial Court

Middlesex, ss                                              Civil Action No. 1881cv00903

| | |
|---|---|
| Rebecca McLaughlin,<br>                Plaintiff<br><br>v<br><br>The Veritas Forum, Inc.,<br>                Defendant | **AMENDED COMPLAINT**<br>Leave to file Granted by Order dated<br>July 24, 2018 |

### PRELIMINARY STATEMENT

This action seeks statutory damages, costs, and attorney fees for the Defendant's course of gender based discrimination, including disparate treatment, denial of health care benefits payments under Plaintiff's employment agreement, and equal pay to the Plaintiff, and retaliatory discharge because Plaintiff objected to disparate treatment, all within a larger context of disparate treatment of women in Defendant's workplace. Defendant's actions violate G.L. c. 151B, §§1,4,9 and G.L. c.149, §105A. Plaintiff first raised her claims before the Massachusetts Commission Against Discrimination on September 12, 2017. Plaintiff filed a Notice of Intent to proceed in the Trial Court on March 2, 2018.

### PARTIES

1.     Plaintiff, Rebecca McLaughlin is a resident of Cambridge, Massachusetts.

2.     Defendant, Veritas Forum is a Massachusetts corporation with its main office in Cambridge, Massachusetts. From a faith based perspective, Veritas Forum provides

opportunities for college and university students and faculty to consider, discuss, and pursue fundamental questions of meaning, purpose, and faith.

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction under G.L. c. 151B, §§1,4,9 and G.L. c.149, §105A and personal jurisdiction over the parties who are present in the Commonwealth of Massachusetts. Venue is proper in Middlesex County where Plaintiff resides and where the Defendant has its main office.

## SUMMARY STATEMENT OF CLAIMS

4. Plaintiff, Rebecca McLaughlin ("Ms. McLaughlin") joined Veritas Forum ("Veritas") in 2008 as national director of Forums. As part of the senior leadership team since 2013, Ms. McLaughlin served as a vice president, first as Vice President of Forums and then as Vice President for Content. Notwithstanding the fact that Veritas's executive director, David Hobbet ("Mr. Hobbet") twice confirmed her to vice president positions and acknowledged her critical role and contributions, he engaged in a concerted course of conduct to undermine her work and contributions; he repeatedly excluded her from key meetings, he demoted her from managing relationships with key external partners who are male, suggesting that these relationships were too important to be left to her; he resisted her efforts to include an equal number of men and women in a program to train 12 cohorts of university professors and experts by employing recruitment criteria that favored men; he recruited and employed men to equivalent or lesser roles with far higher salaries than their female colleagues; he unilaterally terminated her family health care coverage; he engaged in subtle intimidation which caused significant emotional distress to women members of the Veritas staff.5.    In or about the spring of 2017, Ms. McLaughlin completed a self-evaluation statement required by Veritas and openly raised her

disparate treatment as an issue of concern. She had repeatedly raised concerns with Mr. Hobbet about his treatment of her and his dismissal of other female staff without prior negative performance review or exit interview. In August, he discharged her under a pretext. Ms. McLaughlin then discovered that Veritas, beginning in early 2015, had hired and compensated a male vice president employed in a comparable position with comparable responsibilities at a FTE annual salary which was $81,000 higher than her salary. This discrimination continued through the date of her wrongful discharge and included wrongful denial of family health care benefits payments. Ms. McLaughlin discovered also that another male staff member who was hired into a more junior position was similarly compensated well above her salary and well above that of another senior woman at Veritas.

6.     In sum, Mr. Hobbet has engaged in a course of gender based discrimination and disparate treatment aimed at Ms. McLaughlin and other women working for Veritas. Early in his tenure, the Board hired an executive coach to work with Mr. Hobbet, after multiple reports of poor management from his staff team; but this had no significant effect. The Board of Directors was subsequently made aware of Mr. Hobbet's conduct by multiple members of staff – including in a formal letter written by Veritas's in-house counsel on her resignation – and has not taken meaningful action in response. Accordingly, Veritas is responsible for repeated violation of Massachusetts laws barring discrimination, disparate treatment, unequal pay, and retaliation.

## STATEMENT OF FACTS

**Unequal Pay**

7.     Ms. McLaughlin joined Veritas as National Director of Forums in August 2008. She holds a M.Div.(equiv) in theology, as well as a Ph.D. in literature, and Master's and Bachelor's degrees in literature from Cambridge University. From and after September 2010, Ms.

McLaughlin has worked on a part time basis, beginning at 20-25hrs/week when her children were in the first stage of infancy and rising to 33 hours a week. During this time, she routinely worked over and above her paid hours, would travel and work 60+ hours per week when called for, and accrued over 300 hours of Paid Time Off to discharge her responsibilities.

8. While Veritas attempts to justify gender discrimination, disparate treatment, unequal pay, and retaliatory discharge with the assertion of "performance issues", that is a pretext which is rebutted by the fact that Mr. Hobbet promoted Ms. McLaughlin and gave her positive evaluations and bonus awards recognizing that she achieved with part-time hours results equivalent to those of her full-time replacement. Moreover, Veritas's campus partners at local and national levels proactively seek her counsel and input.

9. Mr. Hobbet first promoted Ms. McLaughlin to vice president in October 2013, just three months after his arrival and without any concern for performance or her flexible work schedule. In his promotion statement, Mr. Hobbet stated,

> "Dear Rebecca, [i]t gives me great pleasure to officially offer you a promotion to Vice President, Forums – North America…. This promotion is well deserved and is a testament to your leadership for North American Forums, your work to cultivate a new cadre of compelling speakers and the partnerships you have built at the national and local level with our ministry partners."

10. In February 2015, Mr. Hobbet confirmed Ms. McLaughlin again to a new position as Vice President of Content. In announcing this lateral move, Mr. Hobbet stated:

> "I am thrilled that Rebecca will finally have the capacity to continue to build out our deep speaker network and content pieces – *arguably our most strategic and significant resource across all of Veritas*." (emphasis added)

11. In this role, Ms. McLaughlin continued to play a vital role in the Forums work, advising the Forums team on which presenters to invite and which dialogue partners to engage, writing

4

and organizing content outlines for events, developing discussion guides and student training resources, managing dozens of Veritas's presenter relationships from recruiting new presenters to coaching them on their presentations. She also undertook additional responsibilities, for example, overseeing content and growth for Veritas's social media platforms, overseeing and editing Veritas Books, and transitioning Veritas to a new website. She continued to act as Director of the Veritas Riff program, recruiting and coaching cohorts of 12 Veritas Christian scholars and experts. Furthermore, Ms. McLaughlin spearheaded regional training conferences for Christian scholars in North Carolina and California. This work extended to Veritas's international work, including running a training conference for Christian scholars in New Delhi. She also led student training events in Boston, Virginia, and California. In sum, Ms. McLaughlin continued to bear a significant proportion of the responsibilities she had held as Vice President of Forums – together with her new responsibilities for content.

12. In the spring of 2015, as Ms. McLaughlin transitioned laterally to her role as Vice President of Content, Veritas hired David Dilworth to her former position. The original job description drafted by Mr. Hobbet was under the same title (Vice President of Forums), and while he subsequently changed the title to "Vice President of University Engagement" there was no significant change to the posted job description. When Mr. Dilworth assumed the role, he undertook substantially the same responsibilities that Ms. McLaughlin had performed, managing the same team to execute the work, except without her responsibility for working with presenters and content development.

13. In announcing the new forums and content structure and Ms. McLaughlin's new role, Mr. Hobbet noted that the new Vice President of University Engagement, Mr. Dilworth, would "join the Sr. Leadership team for the Veritas Forum, working closely with our Content and Speaker

development team [Ms. McLaughlin], amongst others". In sum, Mr. Dilworth was joining the senior leadership team *with* Ms. McLaughlin. His senior leadership position was at the same level within Veritas as Ms. McLaughlin's senior leadership position. He and Ms. McLaughlin were charged with a collaborative effort to organize, provide content for, and present forum programs at colleges and universities.

14. Ms. McLaughlin oriented and trained Mr. Dilworth extensively over a course of months and provided strategic direction and guidance for his work. Additionally, given that Mr. Dilworth had neither a theology degree nor personal relations with colleges and universities, Ms. McLaughlin maintained relationships with college and university leaders, facilitated campus forum programs, maintained direction of the Riff program, and led campus training programs. Her collaboration with Mr. Dilworth was a success as underscored by largely equivalent year over year forum results.

15. When Mr. Dilworth left Veritas after 15 months, partly because of Mr. Hobbet's repeated demands that Mr. Dilworth discharge multiple female staff who reported to him – including one of the highest-performing members of the Forums team, against whom Mr. Hobbet had taken exception. The role of managing the Forums team was then given to one of the remaining women on staff, who had served at Veritas for 8 years, and, as learned later, was paid $60,000 - $85,000 less than Mr. Dilworth had been paid.

16. Notwithstanding Ms. McLaughlin's commitment and accomplishments, it was unknown until the summer of 2017 that she was paid far less than her male colleague, Mr. Dilworth. Ms. McLaughlin's FTE salary was $64,014 as Vice President of Forums and Vice President for Content while Mr. Dilworth was paid $145,000 as Vice President of University Engagement, an indefensible difference of $81,000 annually from 2015 through 2017. Even when scaled to a full-

time salary, Ms. McLaughlin was compensated at less than 45% of Mr. Dilworth's pay (and less than 37% when adjusted for cost of living).

17. The substantive content of Ms. McLaughlin's positions, first as Vice President of Forums and then as Vice president of Content, was certainly comparable to Mr. Dilworth's position as Vice President of Engagement. As noted above, Mr. Dilworth assumed most of Ms. McLaughlin's former responsibilities. Together, Mr. Dilworth and Ms. McLaughlin were charged with providing the programs and content for Veritas's forums while Ms. McLaughlin also developed and implemented content for the entire corporation. Both Mr. Dilworth and Ms. McLaughlin were vice presidents, both were members of the senior team, both led staff and college and university partners. While Ms. McLaughlin's work was, as Mr. Hobbet stated, "arguably our most strategic and significant resource across all of Veritas", her position and Mr. Dilworth's position were not substantively dissimilar.

18. Similarly, Ms. McLaughlin and Mr. Dilworth held senior positions requiring comparable skill, effort, responsibility, and working conditions. Ms. McLaughlin was, of course, significantly more experienced than Mr. Dilworth; and she had successfully built university partnership and carried out all of the responsibilities of his work prior to her promotion. And while she focused on content after Mr. Dilworth joined Veritas, she continued to carry on a number of her previous responsibilities where Mr. Dilworth did not have substantive experience or essential relationships. Certainly, Mr. Dilworth's position involved more travel than Ms. McLaughlin's content role, yet she too engaged in significant travel – even to India on behalf of Veritas. Their work was complementary, each depending on the other's skill and commitment for successful forum programs. Finally, of course, Ms. McLaughlin worked less than full time but with no less effort or accomplishment than Mr. Dilworth. Indeed, she routinely worked more

than 33 hours a week and frequently worked well beyond a full-time schedule to carry out Veritas's programs.

19. There was and is no *bona fide* job qualification justifying the pay and benefits disparity between Mr. Dilworth's compensation and Ms. McLaughlin's compensation.

**Gender Based Discrimination**

20. The denial of equal pay to Ms. McLaughlin occurred in a larger context of gender based discrimination reaching back at least to the spring of 2015. With the hiring of Mr. Dilworth, Mr. Hobbet remarked that Ms. McLaughlin had "too much freedom", handed her a list of male forum presenters, and stated that these men were too important for her to manage the relationship – notwithstanding that Ms. McLaughlin had recruited at least one of the men to Veritas's mission and notwithstanding that Veritas's relationship with each of the presenters had been positive under Ms. McLaughlin's direction.

21. When Ms. McLaughlin assumed responsibility for Veritas's Riff project to train 12 cohorts of professors and experts, she worked to include an equal number of women and men in each group. Mr. Hobbet repeatedly undercut this effort, arguing that candidates must be selected on the basis of their enthusiasm for public engagement, a criterion which clearly favored men.

22. When Ms. McLaughlin sought to hire a qualified associate to work with her on content, Mr. Hobbet initially approved and asked Ms. McLaughlin to extend a verbal offer. However, three days later, after Ms. McLaughlin offered the position, Mr. Hobbet reversed course and insisted on hiring a less qualified male.

23. When Mr. Dilworth resigned in the fall of 2016, his position was assumed by a woman whose pay was reduced by Mr. Hobbet to 41% of Mr. Dilworth's pay.

24. In the summer of 2016, Mr. Hobbet terminated Ms. McLaughlin's family health care coverage. He informed her that as a part-time employee she was no longer eligible for healthcare benefits. After Ms. McLaughlin reviewed the Veritas health benefits policy, she learned and informed Mr. Hobbet that employees who worked at least 30 hours a week were, in fact, entitled to family health coverage. His response was to declare unilaterally that her work was now limited to 28 hours a week even though he knew that Ms. McLaughlin routinely worked well over 30 hours weekly. Mr. Hobbet agreed ultimately to make equivalent health care benefit payments in lieu of actual health care benefits. However, Veritas has never fully made the in lieu of payments. Similarly, Veritas has failed and refused to fully pay Ms. McLaughlin for paid time off ("PTO")

25. During 2016, Mr. Hobbet hired Andrew Schuman to an individual contributor role, not at the Vice President level. Despite having far less experience than Ms. McLaughlin and running substantially less programming, Mr. Schuman's starting salary was $30,000 more than Ms. McLaughlin's salary and $40,000 more than the salary of the woman who has succeeded Mr. Dilworth in managing the entire Forums team.

26. In June 2017, Veritas's in-house counsel, Diane Kim resigned, raising concerns about rapid staff turnover, a hostile work environment, and gender bias on Mr. Hobbet's part. Ms. Kim noted that in less than three years 15 staff members (out of a staff of 11-14) had resigned or had been discharged by Mr. Hobbet. In her resignation letter, Ms. Kim stated that it was impossible for staff to raise concerns directly to Mr. Hobbet without fear of retaliation. Her concerns are summarized in her statement to Mr. Hobbet:

> "I am resigning because I have found your leadership to be ineffective, unsafe, unkind, and ultimately, hindering the work of Veritas. Furthermore, based on my own attempts and watching those of others, I have come to the conclusion

> that I could not express my concerns to you without fear of losing my job.... I have kept a record of incidents that led me to the above conclusions and am willing to speak to the board if they wish."

In Ms. Kim's exit interview with two Board members, she referenced Mr. Hobbet's evident gender bias in his treatment of staff.

27. In early 2017, Ms. McLaughlin also raised the issue of disparate treatment directly with Mr. Hobbet in an employee self-evaluation, noting that she had been excluded from meetings that were clearly relevant to her work and where more junior staff members were included, notwithstanding that she was and had been a key member of the senior leadership team since her promotion in 2015. Subsequently, Ms. McLaughlin raised concern about her exclusion from a planned Board meeting, and voiced the concern that the decline in Forums work since she left the Vice President of Forums role was due substantially to chronic staff unhappiness and high turnover. Mr. Hobbet acknowledged privately that the decline in the Forums work would give the Board ample grounds for discharging him from his position as Executive Director, but he refused to acknowledge that chronic staff turnover and unhappiness had played a key role in this, choosing instead to discharge Ms. McLaughlin.

28. At its June 2017 meeting, the Veritas Board was asked to consider ten strategic areas of focus proposed by staff and to choose three. The Board chose Student Engagement, Evangelistic Impact, and Academic Engagement, all of which aligned with Veritas's then current areas of focus. In sum, there was no substantial "new direction". Of the three areas of focus, Ms. McLaughlin had successfully led Evangelistic Impact and Academic engagement for most of her career with Veritas. Accordingly, she was certainly qualified to lead two of the three areas of focus. More recently, she had developed and successfully piloted a new student engagement program model at the University of Virginia, where she had been invited to train 200 student

leaders. She was clearly qualified also to pursue this third area of student engagement chosen by the Board.

29. In August 2017, Mr. Hobbet discharged Ms. McLaughlin, informing her that the Board was moving in a "new direction." He subsequently declared that Ms. McLaughlin lacked the capability and interest to lead in the area of student engagement. Mr. Hobbet's claim is knowingly false. In fact, it was Ms. McLaughlin, well before the Board chose its focus areas, who developed Veritas' new student training program which was directed precisely at student engagement. Nevertheless, Mr. Hobbet discharged her. His rationale is a pretext for discharge in retaliation for Ms. McLaughlin's objections to discrimination and disparate treatment arising from gender bias.

## FIRST CAUSE OF ACTION

30. Paragraphs 1 – 29 are incorporated here.

31. Veritas has violated G.L. c. 151B, §§1,4,9 by gender based discrimination, including disparate treatment, denial of equal pay, denial of health care benefits payments, a hostile environment, and retaliatory discharge because Ms. McLaughlin objected to disparate treatment, all within a larger context of disparate treatment of women in the Defendant's workplace.

## SECOND CAUSE OF ACTION

32. Paragraphs 1-31 are incorporated here.

33. Veritas has violated G.L. c.149, §105A by failing and refusing to pay Ms. McLaughlin on an equal pay basis for comparable work to that of her male colleague failure make health care benefits payments under her employment agreement, all in the context of denial of equal pay to other women employed by Veritas.

## CLAIM FOR RELIEF

Rebecca McLaughlin asks for an award equal to her lost wages and lost health care benefits, including associated withholding taxes. Additionally, Rebecca McLaughlin asks for an award of pay for retaliatory discharge for having raised legitimate concerns about gender based discrimination. Finally, Ms. McLaughlin asks for statutory award of reasonable attorney fees and costs and such other relief as determined by the trial court.

Rebecca McLaughlin asks for trial by jury on all matters so triable.

Dated: July 24, 2018

      Respectfully submitted,
      Rebecca McLaughlin

      By her Attorneys,

      /s/ Edward J Dailey
      Edward J Dailey (BBO 112220)
      SUNSTEIN KANN MURPHY & TIMBERS LLP
      125 Summer Street
      Boston, Massachusetts 02110
      617.443.9292
      617.852.7110 (mobile)
      edailey@sunsteinlaw.com      04418/05001 2962615.1

### Certificate of Service

I certify that this Amended Complaint has been filed electronically with the trial court's ECF system and will be served on all parties pursuant to L.R. 5.4(c).